1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10  SUSANVILLE INDIAN RANCHERIA,        )
                                        )
11                                      )    2:07-cv-259-GEB-DAD
                        Plaintiff,      )
12                                      )    ORDER
            v.                          )
13                                      )
    MIKE LEAVITT, Secretary of the      )
14  United States Department of         )
    Health and Human Services;          )
15  CHARLES W. GRIM, Director of        )
    the Indian Health Service; and      )
16  MARGO KERRIGAN, Area Director of    )
    the California Area Office of       )
17  the Indian Health Service;          )
                                        )
18                      Defendants.     )
    ────────────────────────────────────)

19

20          Plaintiff moves for a preliminary injunction under Federal

21  Rule of Civil Procedure 65(a) and 25 U.S.C. § 450m-1, in which it

22  seeks to enjoin Defendants "from excluding [Plaintiff]'s pharmacy

23  services component from the programs authorized under [Plaintiff]'s

24  self-governance Compact and Calendar Year 2007 Funding Agreement . . .

25  and [a court order] directing Defendants to sign the Compact and CY

26  2007 Funding Agreement and provide such funding as is authorized under

27  these agreements without imposing any condition that would prevent

28  [Plaintiff] from charging beneficiaries for services." (Pl.'s Mot.

                                    1

for Preliminary Inj. ("Mot. for PI") at 1-2.)  Defendants conceded at
the hearing on Plaintiff's motion for preliminary injunction held on
February 26, 2007 that a preliminary injunction should issue
preserving the status quo, but oppose the scope of Plaintiff's
requested preliminary injunction.  (February 26 Hearing; see also
Defs.' Opp'n to Mot. for PI at 3.)

Background

Susanville Indian Rancheria is a federally-recognized Indian
tribe that provides health care and pharmacy services to eligible
Indians in its service area in rural Northeastern California through a
series of contracts with the Indian Health Service ("IHS").  (Pl.'s
Mem. of Law in Supp. of TRO and PI ("Pl.'s Mem.") at 3.)  The IHS is
an agency of the United States Department of Health and Human Services
whose principal mission is to provide health care for American Indians
and Alaska Natives throughout the United States.  (Defs.' Opp'n to
Mot. for TRO at 2.)

Plaintiff's contracts with the IHS have been authorized
under Title I of the Indian Self-Determination and Educational
Assistance Act ("ISDEAA"), 25 U.S.C. §§ 450 et seq.  Plaintiff has
operated, under Title I contracts, a tribal health clinic known as the
Lassen Indian Health Center, which provides health care and pharmacy
services.  (Id. at 3-4.)  Plaintiff asserts that in order to operate
its pharmacy in a fiscally sound manner, in July 2006, it began
charging a co-pay and the acquisition cost of drugs to those customers
who could afford it (exempting indigent and elderly customers), and
informed the IHS of this policy.  (Pl.'s Mem. at 4.)

In the spring of 2006, Plaintiff and the IHS began
negotiating a self-governance Compact and Funding Agreement ("FA")

1   pursuant to Title V of the ISDEAA, 25 U.S.C. §§ 458aaa (1)–(18).  (Id.
2   at 5.)  Among the programs that Plaintiff requested be included in its
3   2007 FA is the pharmacy program, which has been included for many
4   years in Plaintiff's Title I agreements.  (Id.)  The parties were able
5   to agree on the terms of the Compact and FA, except for the pharmacy
6   provisions in the FA.  (Id.)  During the negotiations, Defendants
7   insisted that as a condition precedent to Plaintiff's inclusion of the
8   pharmacy provision in the FA, Plaintiff had to expressly state it
9   would not bill eligible Indian customers for pharmacy services;
10  otherwise, Plaintiff had to delete the pharmacy provision from the FA.
11  (Opp'n to Mot. for TRO at 3; Decl. of Jim Mackay ¶ 12, Ex. D ("Grim
12  Letter") at 2.)

13          Plaintiff rejected both of those options and on December 15,
14  2006, presented its final offer on the Compact and FA, which included
15  the pharmacy program (but was silent as to whether Plaintiff would
16  bill eligible Indians), to the IHS.  (Mackay Decl. ¶ 11; Ex. C.)
17  Since the existing ISDEAA Title I FA was set to expire on December 31,
18  2006, the IHS and Plaintiff agreed to extend the existing FA for 45
19  days (until February 15, 2007), while the IHS considered its response
20  to Plaintiff's final offer on the Title V Compact and FA.  (Id.)

21          On January 29, 2007, the IHS formally communicated to
22  Plaintiff that it would not approve the pharmacy program because the
23  program involves a co-pay feature, and the IHS therefore could not
24  agree to that program.  (Pl.'s Mem. at 5; Grim Letter at 6.)

25          On February 9, 2007, Plaintiff commenced this action,
26  asserting that Defendants' rejection of its final offer violates the
27  ISDEAA.  (Complaint ¶¶ 26-37.)  Also, on February 9, 2007, Plaintiff
28  filed a motion for a temporary restraining order ("TRO") and the

motion for preliminary injunction sub judice.  After Defendants filed

an opposition and a TRO hearing was held on February 14, 2007, a TRO

issued extending the parties' 2006 Annual Funding Agreement, which

expired on February 15, 2007, until a ruling on Plaintiff's motion for

a preliminary injunction issued.  (Feb. 14, 2007 Order at 2-3.)  The

TRO expires on March 1, 2007.

Standard

Typically, to obtain a preliminary injunction, a Plaintiff

must show "either: (1) a combination of probable success on the merits

and the possibility of irreparable harm; or (2) that serious questions

are raised and the balance of hardships tips in [his] favor."

Preminger v. Principi, 422 F.3d 815, 823 (9th Cir. 2005).  Plaintiff

initially argued that it is entitled to a preliminary injunction

because it would suffer irreparable harm without the injunction, the

injunction would have no impact on Defendants, the injunction would

benefit the public interest, and Plaintiff is likely to succeed on the

merits.  (Pl.'s Mem. at 2.)  However, at the February 14 hearing,

Plaintiff argued that because Plaintiff seeks a statutorily authorized

injunction (under 25 U.S.C. § 450m-1(a)), rather than an equitable

injunction, Plaintiff need only establish a likelihood of success on

the merits to be entitled to an injunction.[1]  (See also Reply at 1-3.)

Plaintiff seeks an injunction under 25 U.S.C. § 450m-1(a),

which provides:

---

[1]     Defendants have not responded to this argument.  At the
February 26 hearing, when probed about the standard Plaintiff must
meet to be entitled to a preliminary injunction, Defendants' counsel
responded by conceding that an injunction should issue and contended
that the standard is irrelevant since the issue is determining what
constitutes the status quo because that will define the scope of the
injunction.

1
2
3
4
5
6
7
8

> [D]istrict courts may order appropriate relief
> including . . . injunctive relief against any
> action by an officer of the United States or any
> agency thereof contrary to this subchapter or
> regulations promulgated thereunder, or mandamus to
> compel an officer or employee of the United
> States, or any agency thereof, to perform a duty
> provided under this subchapter or regulations
> promulgated hereunder (including immediate
> injunctive relief to reverse a declination finding
> under section 450f(a)(2) of this title or to
> compel the Secretary [of the United States
> Department of Health and Human Services] to award
> and fund an approved self-determination contract).

9  25 U.S.C. § 450m-1(a) (made applicable to Title V by 25 U.S.C.

10  § 458aaa-10(a)). "The traditional requirements for equitable relief

11  need not be satisfied [when a statute] expressly authorizes the

12  issuance of an injunction." U.S. v. Estate Preservation Servs., 202

13  F.3d 1093, 1098 (9th Cir. 2000) (citing Trailer Train Co. v. State Bd.

14  of Equalization, 697 F.2d 860, 869 (9th Cir. 1983)); Atchison, Topeka

15  & Santa Fe Ry. v. Lennen, 644 F.2d 255, 260 (10th Cir. 1981) (per

16  curiam); Star Fuel Marts, LLC v. Sam's East, Inc., 362 F.3d 639,

17  651-52 (10th Cir. 2004); Nat'l Wildlife Fed. v. Burlington N. R.R.,

18  Inc., 23 F.3d 1508, 1511 (9th Cir. 1994) (finding that in order to get

19  an injunction under the Endangered Species Act ("ESA"), a "plaintiff

20  must make a showing that a violation of the ESA is at least likely in

21  the future"); Crownpoint Inst. of Tech. v. Norton, Civ. No. 04-531

22  JP/DJS, Findings of Fact and Conclusions of Law at 26, ¶ 30 (stating,

23  in an ISDEAA case involving Title I, that where a tribal organization

24  sought an injunction pursuant to 25 U.S.C. § 450m-1(a), "[t]he

25  specific mandamus relief authorized by ISDA relieves [the plaintiff

26  tribal organization] of proving the usual equitable elements including

27  irreparable injury and absence of an adequate remedy at law.").

28

<u>Likelihood of Success on the Merits</u>

Plaintiff contends that it is likely to succeed on its claim that Defendants' rejection of its final offer violates the ISDEAA because Defendants have not met their burden of showing by clear and convincing evidence that they had a valid reason, from one of the four rejection criteria in 25 U.S.C. § 458aaa-6(c)(1)(A), for rejecting Plaintiff's final offer. (Pl.'s Mem. at 10-12.) Defendants rejoin that Plaintiff is not likely to succeed on the merits because "[t]he dispute herein centers on the interpretation of [25 U.S.C. § 458aaa-14(c), and that] statute . . . prohibits tribes and tribal organizations from billing Indians." (Opp'n to Mot. for TRO at 9.) Defendants contend that, therefore, they were legally obligated to reject Plaintiff's final offer since "the IHS cannot agree to [Plaintiff's] proposal to bill or charge eligible Indian patients for pharmacy services." (<u>Id.</u> at 2.)

Under Title V of the ISDEAA, "[i]f the Secretary rejects [a final offer], the Secretary shall provide . . . a timely written notification to the Indian tribe that contains a specific finding that clearly demonstrates, or that is supported by a controlling legal authority, that [one of four criteria is met]." 25 U.S.C. § 458aaa-6(c)(1). The "Secretary shall have the burden of demonstrating by clear and convincing evidence the validity of the grounds for rejecting the offer (or a provision thereof)." <u>Id.</u> § 458aaa-6(d).

The Secretary rejected Plaintiff's final offer on two grounds. First, the Secretary relied on the third criterion in § 458aaa-6(c)(1)(A), which provides that a final offer can be rejected if "the Indian tribe cannot carry out the program, function, service, or activity (or portion thereof) in a manner that would not result in

6

1  significant danger or risk to the public health." (Grim Letter at 6

2  (citing 25 U.S.C. § 458aaa-6(c)(1)(A)(iii).) In rejecting Plaintiff's

3  final offer, the IHS stated:

4          [E]nforcement of [Plaintiff's] Pharmacy Policy
           could jeopardize health care services to the
5          eligible [American Indians/ Alaska Natives] who
           are otherwise eligible for health care services.
6          Therefore, the proposed language is rejected on
           the grounds that [Plaintiff] cannot "carry out the
7          program, function, service or activity (or portion
           thereof) in a manner that would not result in
8          significant danger or risk to the public health."

9  (Grim Letter at 6.) Defendants have not addressed this criterion in

10 their opposition papers. Instead, Defendants focus on the Secretary's

11 second ground for denying Plaintiff's final offer – 25 U.S.C.

12 § 458aaa-14(c).

13      Plaintiff argues that reliance on the risk to the public

14 health criteria is misplaced because not imposing a fee for pharmacy

15 services would actually pose a greater risk to health since without

16 it, Plaintiff would not be able to operate its pharmacy, would be

17 forced to close it, and that closing would adversely affect its

18 customers. Plaintiff also contends that Defendants have not met their

19 burden under 25 U.S.C. §§ 458aaa-6(c)(1) and 458aaa-6(d). (Pl.'s Mem.

20 at 11; Reply at 10.)

21      The Secretary's conclusory statement that public health is

22 at risk if the pharmacy provision is approved as Plaintiff requests is

23 not likely to satisfy the Secretary's burden of specifically setting

24 forth, by clear and convincing evidence, why Plaintiff could not carry

25 out its pharmacy program "in a manner that would not result in

26 significant danger or risk to the public health."

27      The Secretary also rejected Plaintiff's final offer on the

28 ground that the IHS cannot sign the Compact with the co-pay feature

because the IHS cannot bill or charge beneficiaries for services under

the ISDEAA and cannot contract with tribes under the ISDEAA to carry

out activities that IHS itself has no legal authority to carry out.

(Grim Letter at 4 (citing 25 U.S.C. § 458aaa-14(c).)[2]

When rejecting the final offer on the lack of authority

ground, the Secretary stated:

> [T]he IHS cannot agree to the pharmacy provision
> submitted by [Plaintiff] because the IHS cannot
> contract or compact with Tribes to carry out
> activities that the agency has no authority to
> carry out itself.  See 25 U.S.C. § 450f(a)(1),
> 458aaa-4(b)(2). [Plaintiff's] proposed pharmacy
> program is not a program provided to eligible
> beneficiaries under Federal law, 25 U.S.C. §
> 458aaa-4(b)(1), nor is it a program that IHS is
> authorized to administer.  25 U.S.C. § 458aaa-
> 4(b)(2).  In addition, the IHS is prohibited from
> entering into a contract for an activity that
> cannot be lawfully carried out. . . .  Here, there
> is no legal authority for the IHS to enter into an
> ISDEAA contract with [Plaintiff] to bill eligible
> [American Indians/ Alaska Natives] for services
> provided under the contract.  Therefore, the IHS
> is prohibited from entering into the contract, and
> must reject the proposed language.

(Grim Letter at 5-6.)

Plaintiff argues the Secretary improperly relied on 25

---

[2] Defendants also argue that 25 U.S.C. § 458aaa-5(e) supports their denial of Plaintiff's final offer since Plaintiff's co-pay policy denies eligibility to pharmacy services to some Indians.  (Feb. 14, 2007 Hearing.)  Section 458aaa-5(e) provides that a tribe's redesign or consolidation may not "have the effect of denying eligibility for services to population groups otherwise eligible to be served under applicable Federal law."  However, eligibility is different from availability or accessibility, and a co-pay policy is not an eligibility criterion.  See 42 C.F.R. §§ 136.11, 12; accord Lincoln v. Vigil, 508 U.S. 182, 198-99 (1993) (distinguishing between denial of access and of eligibility).

Moreover, as Defendants' counsel conceded during the February 14 hearing, if Plaintiff did not provide a pharmacy program, the beneficiaries that Defendants allege are denied eligibility by Plaintiff's pharmacy program would have to purchase drugs elsewhere at higher costs.  (Feb. 14, 2007 Hearing.)

U.S.C. § 458aaa-14(c) as a ground justifying denial of Plaintiff's final offer since notwithstanding the statutory proscription that prohibits the IHS from billing and from requiring tribes to bill beneficiaries, tribes have the discretion to determine whether to bill beneficiaries.  (Pl.'s Mem. at 10.)

Section 458aaa-14(c) provides: "The Indian Health Service under this subchapter shall neither bill nor charge those Indians who may have the economic means to pay for services, nor require any Indian tribe to do so."  On its face, section 458aaa-14(c) does not prohibit Tribes from billing.  If Congress had intended to prohibit Tribes from billing, Congress could have replaced the word "require" with the word "permit," "allow," or "authorize."  Congress could also have stated that "neither the IHS *nor* any tribe" shall bill or charge Indians, in lieu of the clause "nor require any Indian tribe to do so."  <u>See e.g.,</u> <u>Brown v. Gardner</u>, 513 U.S. 115, 117-18 (1994) (rejecting Veterans Administration's attempt to add a "fault" requirement to a liability statute "[d]espite the absence from the statutory language of so much as a word about fault on the part of the VA").

When Congress enacted 25 U.S.C. § 458aaa-14(c), it expressly added the clause "nor require any Indian tribe to do so." (Opp'n to Mot. for TRO at 10-11.)  If § 458aaa-14(c) is read as Defendants suggest, the entire phrase "nor require any Indian tribe to do so" is rendered redundant since the first clause alone would prohibit IHS from requiring tribes to charge for services.  (Reply at 14.)  Courts "should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress." <u>Beisler v. C.I.R.</u>, 814 F.2d 1304, 1307 (9th Cir. 1987);

see also Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307-08 (1961)
(rejecting an interpretation of one subpart of statute where that
interpretation would render the immediately following subpart "a mere
redundancy").

Defendants support their interpretation of § 458aaa-14(c) by
arguing that when Congress enacted that provision, it was aware of a
1996 opinion from an administrative law judge holding that, as long as
the appropriation act restriction codified at 25 U.S.C. § 1681
remained in effect (the statutory provision that Defendants assert
§ 458aaa-14(c) was derived from), the IHS was prohibited not only
from directly billing eligible Indians for services the IHS provided
but also from entering into ISDEAA contracts with a tribe under which
a tribe itself would bill eligible Indians.  (Opp'n to Mot. for TRO at
12, 14 (citing Nizhoni Smiles, Inc. v. IHS, DAB Dec. No. CR450
(1996).)  Defendants assert that therefore, "despite the lack of an
express statement prohibiting the IHS from entering into ISDEAA
contracts or compacts under which tribes (and not IHS) would bill
eligible Indians, it can be presumed that Congress intended for
section 458aaa-14(c) to have such an effect."  (Opp'n to Mot. for TRO
at 13.)  Defendants contend that "[a] canon of statutory construction
recognizes that Congress is aware of an administrative or judicial
interpretation of a statute and that it intends to adopt that
interpretation when it adopts a new law that incorporates sections of
a prior law."  (Opp'n to Mot. for TRO at 13-14 (citing Lorillard v.
Pons, 434 U.S. 575, 581 (1978)).)

However, 25 U.S.C. § 1681 is no longer included in the IHS
appropriations acts (Opp'n to Mot. for TRO at 12), and in Nizhoni
Smiles, § 1681 was interpreted in light of Title I of the ISDEAA, not

1  Title V.  (Reply at 15.)  Moreover, when Congress adopted § 458aaa-

2  14(c), it did not re-enact § 1681 without change, or incorporate

3  § 1681 into § 458aaa-14(c).[3]

4          Congress is presumed to be aware of an
        administrative or judicial interpretation of a

5          statute and to adopt that interpretation when it
        re-enacts a statute without change . . . . So

6          too, where . . . Congress adopts a new law
        incorporating sections of a prior law, Congress

7          normally can be presumed to have had knowledge of
        the interpretation given to the incorporated law,

8          at least insofar as it affects the new statute.

9  Lorillard, 434 U.S. at 580.  Here, Congress adopted the new clause

10  "nor require any Indian tribe to do so."  Since it added that clause,

11  it is presumed under the rationale of Lorillard, that Congress was

12  aware of IHS's interpretation of the billing prohibition in Nizhoni

13  Smiles and deliberately chose the exacting (and different) language in

14  § 458aaa-14(c) to give tribes the discretion to bill, even though the

15  IHS is prohibited from billing or forcing tribes to bill.

16  Defendants acknowledge that § 458aaa-14(c) is silent as to whether a

17  tribe can charge or bill Indians.[4]  (Feb. 14, 2007 Hearing.)  However,

18  Defendants contend that when read in light of the entire ISDEAA,

19  § 458aaa-14(c) "unambiguously prohibits tribes and tribal

20

21

22

23  ────────────────

24      [3]    Defendants even concede that "Congress did not actually
incorporate section 1681 into section 458aaa-14(c)."  (Opp'n to Mot.

25  for TRO at 14.)

26      [4]    Congress's silence with regard to tribal billing should not
be construed to mean that Congress assumed that such a prohibition was

27  understood.  See Zuber v. Allen, 396 U.S. 168, 185 (1969)
("Legislative silence is a poor beacon to follow in discerning the

28  proper statutory route."); Brown, 513 U.S. at 121 ("[C]ongressional
silence 'lacks persuasive significance'").

1  organizations from billing Indians."[5]  (Opp'n to Mot. for TRO at 9.)

2  In support of their position, Defendants cite to 25 U.S.C. §§ 458aaa-

3  4(b)(1) and (2).

4        The ISDEAA establishes what may be included in a Title V

5  Funding Agreement.  25 U.S.C. § 458aaa-4(b).  It authorizes a tribe to

6  administer programs, services, functions, and activities ("PSFAs")

7  "that are carried out for the benefit of Indians because of their

8  status as Indians without regard to the agency or office of the Indian

9  Health Service within which the program, service, function or activity

10 (or portion thereof) is performed."  Id. § 458aaa-4(b)(1).  Further,

11 458aaa-4(b)(2) restates this authority by providing that PSFAs "with

12 respect to which Indian tribes or Indians are primary or significant

13 beneficiaries, administered by the Department of Health and Human

14 Services through the Indian Health Service and all local, field,

15 service unit, area, regional, and central headquarters or national

16 office functions so administered under the authority of" the

17 enumerated statutes may be included in an FA.  Id. § 458aaa-4(b)(2).

18 Thus, according to Defendants, the Tribe may only contract for

19 programs that the IHS itself is authorized to administer.  (Opp'n to

20 Mot. for TRO at 10.)

21        But, §§ 458aaa-4(b)(1) and (2) do not contain any language

22

23        [5]    Defendants also assert, however, that deference should be
   given to the IHS's interpretation of § 458aaa-4(b).  (Opp'n to Mot.
24 for TRO at 15 (citing Good Samaritan Hosp. v. Shalala, 508 U.S. 402,
   417 (1993)).)  But, the deference referenced in Good Samaritan only
25 applies to ambiguous statutory provisions.  508 U.S. at 414 (stating
   that when "[c]onfronted with an ambiguous statutory provision, we
26 generally will defer to a permissible interpretation espoused by the
   agency entrusted with its implementation.").  Moreover, the referenced
27 deference appears preempted by the statutorily-mandated canon of
   construction found in 25 U.S.C. § 458aaa-11(f), prescribing that any
28 statutory ambiguity is resolved in favor of a tribe.

suggesting that Congress intended to prohibit or restrict the PSFAs that a tribe may administer. (Feb. 14, 2007 Hearing.) Further §§ 458aaa-4(b)(1) and (2) do not address the *manner* in which a program may be operated, which is at issue here. (Reply at 10.)

Even if this statutory scheme is ambiguous as to the manner in which a tribe could operate a program, the ISDEAA prescribes that "[e]ach provision of [the ISDEAA] and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe." 25 U.S.C. § 458aaa-11(f). Further, "the Secretary shall interpret all Federal laws . . . in a manner that will facilitate- (1) the inclusion of programs, services, functions, and activities (or portions thereof) and funds associated therewith, in the agreements entered into under this section; (2) the implementation of compacts and funding agreements entered into under this part; and (3) the achievement of tribal health goals and objectives." 25 U.S.C. § 458aaa-11(a).

Additionally, the Congressional declaration of policy regarding the ISDEAA specifically indicates that a goal of the ISDEAA is to "establish . . . a meaningful Indian self-determination policy which will permit an orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services." 25 U.S.C. § 450a(b). Congress stated that "the United States is committed to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities." Id.

1    Therefore, Plaintiff is likely to succeed on its claim that
2    Defendants' rejection of Plaintiff's final offer violates the ISDEAA.

3                              Status Quo

4    Defendants concede that a preliminary injunction should
5    issue, arguing "the only issue to be decided in the pending motion is
6    the nature and extent of the status quo." (Opp'n to Mot. for PI at
7    3.) Although Plaintiff now argues that it is entitled to a
8    preliminary injunction under 25 U.S.C. § 450m-1(a), Plaintiff's motion
9    specifically seeks to preserve the status quo. (Pl.'s Mem. at 2, 3,
10   15.) "[T]he function of a preliminary injunction is to preserve the
11   status quo ante litem." Regents of the Univ. of Cal. v. Am. Broad.
12   Cos., 747 F.2d 511, 514 (9th Cir. 1984); Dep't of Parks and Recreation
13   for State of Cal. v. Bazaar, 448 F.3d 1118, 1124 (9th Cir. 2006).

14   "Status quo" is defined as "'the last, uncontested status
15   which preceded the pending controversy.'" Regents of the Univ. of
16   Cal., 747 F.2d at 514 (quoting Tanner Motor Livery, Ltd. v. Avis,
17   Inc., 316 F.2d 804, 809 (9th Cir. 1963)). "In determining what state
18   of affairs constitute the status quo, [a court] must look to the last
19   peaceable state between the parties which preceded the present
20   controversy." Ashland Oil Co. of Cal. v. Fed. Energy Admin., 389 F.
21   Supp. 1119, 1126-27 (C.D. Cal. 1975) (quoting Wash. Basketball Club
22   Inc. v. Berry, 304 F. Supp. 1193 (N.D. Cal. 1969)).

23   Defendants assert the status quo is "an extension of
24   Plaintiff's current Title I Contract and Annual Funding Agreement
25   (AFA), and not the Title V compact as requested by Susanville."
26   (Opp'n to Mot. for PI at 2.) Plaintiff counters the status quo is the
27   negotiated Title V Compact, including the pharmacy services provision
28   and no prohibition on billing beneficiaries. (Feb. 26, 2007 Hearing.)

1    Plaintiff's position on the status quo appears to more
2  accurately reflect the last peaceable "state of affairs" between the
3  parties.  Although the last peaceable state between the parties did
4  not include an executed Compact or 2007 FA, it did consist of a
5  contract and funding agreement between the parties that was silent as
6  to billing (with language identical to the language in the Compact and
7  2007 FA); Plaintiff engaged in billing and Defendants were aware of
8  it; and the parties understood that Plaintiff would be entitled to a
9  Title V Compact and FA for 2007.  Defendants acknowledge that
10 *factually* the status quo was an agreement between the parties for a
11 pharmacy program (silent as to billing) and Plaintiff was in fact
12 billing (and Defendants were aware of it).  (Feb. 26, 2007 Hearing.)
13 Yet, Defendants' position on the status quo ignores the fact that the
14 parties understood that a Title V Compact and 2007 FA would be entered
15 into and that the terms of the Compact had been negotiated and agreed
16 upon, except for the no billing language applicable to Plaintiff's
17 proposed pharmacy program.

18                              Conclusion

19    Therefore, because Plaintiff has established a likelihood of
20 success on the merits and because the status quo is best preserved by
21 an injunction permitting the parties to continue operating in the
22 manner they were prior to commencement of this litigation and
23 recognizing the expectation of the parties that a Compact and 2007 FA
24 would be entered into, the following preliminary injunction issues:
25 The parties are directed to execute the Compact and CY 2007 FA (as
26 proposed by Plaintiff in its final offer) and provide such funding as
27 is authorized under these agreements without imposing any condition
28 that would prevent Plaintiff from charging beneficiaries for services.

1  If a judicial determination is made that Defendants' rejection of

2  Plaintiff's final offer (and imposition of conditions on executing the

3  Compact and 2007 FA proposed therein) was lawful, either (1) all

4  references to the Tribe's pharmacy services program in the 2007 FA

5  shall be deleted, no further funds shall be allocated to the Tribe's

6  pharmacy services program, and any funds specifically allocated for

7  the pharmacy services program shall be returned; or (2) a provision

8  shall be added to the 2007 FA stating that eligible beneficiaries will

9  not be charged for services pursuant to the pharmacy services

10 program.[6]

11        IT IS SO ORDERED.

12 Dated:  February 28, 2007

13

14        _____
          GARLAND E. BURRELL, JR.
15        United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27
---
28        [6]    No bond is required since Plaintiff has requested a waiver
   of the security requirement (Pl.'s Mot. for PI at 2) and Defendants do
   not oppose that request (Feb. 14, 2007 Hearing).

16