UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANVILLE INDIAN RANCHERIA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MIKE LEAVITT, Secretary of the ) <br> United States Department of ) <br> Health and Human Services; ) <br> CHARLES W. GRIM, Director of ) <br> the Indian Health Service; and ) <br> MARGO KERRIGAN, Area Director of ) <br> the California Area Office of ) <br> the Indian Health Service; ) <br> ) <br> Defendants. ) | 2:07-cv-259-GEB-DAD <br><br> <u>ORDER</u> |

Plaintiff moves for a preliminary injunction under Federal Rule of Civil Procedure 65(a) and 25 U.S.C. § 450m-1, in which it seeks to enjoin Defendants "from excluding [Plaintiff]'s pharmacy services component from the programs authorized under [Plaintiff]'s self-governance Compact and Calendar Year 2007 Funding Agreement . . . and [a court order] directing Defendants to sign the Compact and CY 2007 Funding Agreement and provide such funding as is authorized under these agreements without imposing any condition that would prevent [Plaintiff] from charging beneficiaries for services."  (Pl.'s Mot.

1

for Preliminary Inj. ("Mot. for PI") at 1-2.)  Defendants conceded at the hearing on Plaintiff's motion for preliminary injunction held on February 26, 2007 that a preliminary injunction should issue preserving the status quo, but oppose the scope of Plaintiff's requested preliminary injunction.  (February 26 Hearing; see also Defs.' Opp'n to Mot. for PI at 3.)

## Background

Susanville Indian Rancheria is a federally-recognized Indian tribe that provides health care and pharmacy services to eligible Indians in its service area in rural Northeastern California through a series of contracts with the Indian Health Service ("IHS").  (Pl.'s Mem. of Law in Supp. of TRO and PI ("Pl.'s Mem.") at 3.)  The IHS is an agency of the United States Department of Health and Human Services whose principal mission is to provide health care for American Indians and Alaska Natives throughout the United States.  (Defs.' Opp'n to Mot. for TRO at 2.)

Plaintiff's contracts with the IHS have been authorized under Title I of the Indian Self-Determination and Educational Assistance Act ("ISDEAA"), 25 U.S.C. §§ 450 et seq.  Plaintiff has operated, under Title I contracts, a tribal health clinic known as the Lassen Indian Health Center, which provides health care and pharmacy services.  (Id. at 3-4.)  Plaintiff asserts that in order to operate its pharmacy in a fiscally sound manner, in July 2006, it began charging a co-pay and the acquisition cost of drugs to those customers who could afford it (exempting indigent and elderly customers), and informed the IHS of this policy.  (Pl.'s Mem. at 4.)

In the spring of 2006, Plaintiff and the IHS began negotiating a self-governance Compact and Funding Agreement ("FA")

pursuant to Title V of the ISDEAA, 25 U.S.C. §§ 458aaa (1)-(18).  (Id. at 5.)  Among the programs that Plaintiff requested be included in its 2007 FA is the pharmacy program, which has been included for many years in Plaintiff's Title I agreements.  (Id.)  The parties were able to agree on the terms of the Compact and FA, except for the pharmacy provisions in the FA.  (Id.)  During the negotiations, Defendants insisted that as a condition precedent to Plaintiff's inclusion of the pharmacy provision in the FA, Plaintiff had to expressly state it would not bill eligible Indian customers for pharmacy services; otherwise, Plaintiff had to delete the pharmacy provision from the FA. (Opp'n to Mot. for TRO at 3; Decl. of Jim Mackay ¶ 12, Ex. D ("Grim Letter") at 2.)

       Plaintiff rejected both of those options and on December 15, 2006, presented its final offer on the Compact and FA, which included the pharmacy program (but was silent as to whether Plaintiff would bill eligible Indians), to the IHS.  (Mackay Decl. ¶ 11; Ex. C.) Since the existing ISDEAA Title I FA was set to expire on December 31, 2006, the IHS and Plaintiff agreed to extend the existing FA for 45 days (until February 15, 2007), while the IHS considered its response to Plaintiff's final offer on the Title V Compact and FA.  (Id.)

       On January 29, 2007, the IHS formally communicated to Plaintiff that it would not approve the pharmacy program because the program involves a co-pay feature, and the IHS therefore could not agree to that program.  (Pl.'s Mem. at 5; Grim Letter at 6.)

       On February 9, 2007, Plaintiff commenced this action, asserting that Defendants' rejection of its final offer violates the ISDEAA.  (Complaint ¶¶ 26-37.)  Also, on February 9, 2007, Plaintiff filed a motion for a temporary restraining order ("TRO") and the

3

motion for preliminary injunction sub judice. After Defendants filed an opposition and a TRO hearing was held on February 14, 2007, a TRO issued extending the parties' 2006 Annual Funding Agreement, which expired on February 15, 2007, until a ruling on Plaintiff's motion for a preliminary injunction issued. (Feb. 14, 2007 Order at 2-3.) The TRO expires on March 1, 2007.

## Standard

Typically, to obtain a preliminary injunction, a Plaintiff must show "either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in [his] favor." Preminger v. Principi, 422 F.3d 815, 823 (9th Cir. 2005). Plaintiff initially argued that it is entitled to a preliminary injunction because it would suffer irreparable harm without the injunction, the injunction would have no impact on Defendants, the injunction would benefit the public interest, and Plaintiff is likely to succeed on the merits. (Pl.'s Mem. at 2.) However, at the February 14 hearing, Plaintiff argued that because Plaintiff seeks a statutorily authorized injunction (under 25 U.S.C. § 450m-1(a)), rather than an equitable injunction, Plaintiff need only establish a likelihood of success on the merits to be entitled to an injunction.[1] (See also Reply at 1-3.)

Plaintiff seeks an injunction under 25 U.S.C. § 450m-1(a), which provides:

---

[1] Defendants have not responded to this argument. At the February 26 hearing, when probed about the standard Plaintiff must meet to be entitled to a preliminary injunction, Defendants' counsel responded by conceding that an injunction should issue and contended that the standard is irrelevant since the issue is determining what constitutes the status quo because that will define the scope of the injunction.

4

>           [D]istrict courts may order appropriate relief
>           including . . . injunctive relief against any
>           action by an officer of the United States or any
>           agency thereof contrary to this subchapter or
>           regulations promulgated thereunder, or mandamus to
>           compel an officer or employee of the United
>           States, or any agency thereof, to perform a duty
>           provided under this subchapter or regulations
>           promulgated hereunder (including immediate
>           injunctive relief to reverse a declination finding
>           under section 450f(a)(2) of this title or to
>           compel the Secretary [of the United States
>           Department of Health and Human Services] to award
>           and fund an approved self-determination contract).

25 U.S.C. § 450m-1(a) (made applicable to Title V by 25 U.S.C. § 458aaa-10(a)).  "The traditional requirements for equitable relief need not be satisfied [when a statute] expressly authorizes the issuance of an injunction."  U.S. v. Estate Preservation Servs., 202 F.3d 1093, 1098 (9th Cir. 2000) (citing Trailer Train Co. v. State Bd. of Equalization, 697 F.2d 860, 869 (9th Cir. 1983)); Atchison, Topeka & Santa Fe Ry. v. Lennen, 644 F.2d 255, 260 (10th Cir. 1981) (per curiam); Star Fuel Marts, LLC v. Sam's East, Inc., 362 F.3d 639, 651-52 (10th Cir. 2004); Nat'l Wildlife Fed. v. Burlington N. R.R., Inc., 23 F.3d 1508, 1511 (9th Cir. 1994) (finding that in order to get an injunction under the Endangered Species Act ("ESA"), a "plaintiff must make a showing that a violation of the ESA is at least likely in the future"); Crownpoint Inst. of Tech. v. Norton, Civ. No. 04-531 JP/DJS, Findings of Fact and Conclusions of Law at 26, ¶ 30 (stating, in an ISDEAA case involving Title I, that where a tribal organization sought an injunction pursuant to 25 U.S.C. § 450m-1(a), "[t]he specific mandamus relief authorized by ISDA relieves [the plaintiff tribal organization] of proving the usual equitable elements including irreparable injury and absence of an adequate remedy at law.").

Likelihood of Success on the Merits

Plaintiff contends that it is likely to succeed on its claim that Defendants' rejection of its final offer violates the ISDEAA because Defendants have not met their burden of showing by clear and convincing evidence that they had a valid reason, from one of the four rejection criteria in 25 U.S.C. § 458aaa-6(c)(1)(A), for rejecting Plaintiff's final offer. (Pl.'s Mem. at 10-12.) Defendants rejoin that Plaintiff is not likely to succeed on the merits because "[t]he dispute herein centers on the interpretation of [25 U.S.C. § 458aaa-14(c), and that] statute . . . prohibits tribes and tribal organizations from billing Indians." (Opp'n to Mot. for TRO at 9.) Defendants contend that, therefore, they were legally obligated to reject Plaintiff's final offer since "the IHS cannot agree to [Plaintiff's] proposal to bill or charge eligible Indian patients for pharmacy services." (Id. at 2.)

Under Title V of the ISDEAA, "[i]f the Secretary rejects [a final offer], the Secretary shall provide . . . a timely written notification to the Indian tribe that contains a specific finding that clearly demonstrates, or that is supported by a controlling legal authority, that [one of four criteria is met]." 25 U.S.C. § 458aaa-6(c)(1). The "Secretary shall have the burden of demonstrating by clear and convincing evidence the validity of the grounds for rejecting the offer (or a provision thereof)." Id. § 458aaa-6(d).

The Secretary rejected Plaintiff's final offer on two grounds. First, the Secretary relied on the third criterion in § 458aaa-6(c)(1)(A), which provides that a final offer can be rejected if "the Indian tribe cannot carry out the program, function, service, or activity (or portion thereof) in a manner that would not result in

significant danger or risk to the public health." (Grim Letter at 6 (citing 25 U.S.C. § 458aaa-6(c)(1)(A)(iii).)  In rejecting Plaintiff's final offer, the IHS stated:

> [E]nforcement of [Plaintiff's] Pharmacy Policy could jeopardize health care services to the eligible [American Indians/ Alaska Natives] who are otherwise eligible for health care services. Therefore, the proposed language is rejected on the grounds that [Plaintiff] cannot "carry out the program, function, service or activity (or portion thereof) in a manner that would not result in significant danger or risk to the public health."

(Grim Letter at 6.) Defendants have not addressed this criterion in their opposition papers. Instead, Defendants focus on the Secretary's second ground for denying Plaintiff's final offer – 25 U.S.C. § 458aaa-14(c).

Plaintiff argues that reliance on the risk to the public health criteria is misplaced because not imposing a fee for pharmacy services would actually pose a greater risk to health since without it, Plaintiff would not be able to operate its pharmacy, would be forced to close it, and that closing would adversely affect its customers. Plaintiff also contends that Defendants have not met their burden under 25 U.S.C. §§ 458aaa-6(c)(1) and 458aaa-6(d). (Pl.'s Mem. at 11; Reply at 10.)

The Secretary's conclusory statement that public health is at risk if the pharmacy provision is approved as Plaintiff requests is not likely to satisfy the Secretary's burden of specifically setting forth, by clear and convincing evidence, why Plaintiff could not carry out its pharmacy program "in a manner that would not result in significant danger or risk to the public health."

The Secretary also rejected Plaintiff's final offer on the ground that the IHS cannot sign the Compact with the co-pay feature

7

because the IHS cannot bill or charge beneficiaries for services under the ISDEAA and cannot contract with tribes under the ISDEAA to carry out activities that IHS itself has no legal authority to carry out. (Grim Letter at 4 (citing 25 U.S.C. § 458aaa-14(c).)[2]

When rejecting the final offer on the lack of authority ground, the Secretary stated:

> [T]he IHS cannot agree to the pharmacy provision submitted by [Plaintiff] because the IHS cannot contract or compact with Tribes to carry out activities that the agency has no authority to carry out itself. See 25 U.S.C. § 450f(a)(1), 458aaa-4(b)(2). [Plaintiff's] proposed pharmacy program is not a program provided to eligible beneficiaries under Federal law, 25 U.S.C. § 458aaa-4(b)(1), nor is it a program that IHS is authorized to administer.  25 U.S.C. § 458aaa-4(b)(2).  In addition, the IHS is prohibited from entering into a contract for an activity that cannot be lawfully carried out. . . .  Here, there is no legal authority for the IHS to enter into an ISDEAA contract with [Plaintiff] to bill eligible [American Indians/ Alaska Natives] for services provided under the contract.  Therefore, the IHS is prohibited from entering into the contract, and must reject the proposed language.

(Grim Letter at 5-6.)

Plaintiff argues the Secretary improperly relied on 25

---

[2] Defendants also argue that 25 U.S.C. § 458aaa-5(e) supports their denial of Plaintiff's final offer since Plaintiff's co-pay policy denies eligibility to pharmacy services to some Indians. (Feb. 14, 2007 Hearing.)  Section 458aaa-5(e) provides that a tribe's redesign or consolidation may not "have the effect of denying eligibility for services to population groups otherwise eligible to be served under applicable Federal law."  However, eligibility is different from availability or accessibility, and a co-pay policy is not an eligibility criterion.  See 42 C.F.R. §§ 136.11, 12; accord Lincoln v. Vigil, 508 U.S. 182, 198-99 (1993) (distinguishing between denial of access and of eligibility).

Moreover, as Defendants' counsel conceded during the February 14 hearing, if Plaintiff did not provide a pharmacy program, the beneficiaries that Defendants allege are denied eligibility by Plaintiff's pharmacy program would have to purchase drugs elsewhere at higher costs.  (Feb. 14, 2007 Hearing.)

U.S.C. § 458aaa-14(c) as a ground justifying denial of Plaintiff's final offer since notwithstanding the statutory proscription that prohibits the IHS from billing and from requiring tribes to bill beneficiaries, tribes have the discretion to determine whether to bill beneficiaries. (Pl.'s Mem. at 10.)

Section 458aaa-14(c) provides: "The Indian Health Service under this subchapter shall neither bill nor charge those Indians who may have the economic means to pay for services, nor require any Indian tribe to do so." On its face, section 458aaa-14(c) does not prohibit Tribes from billing. If Congress had intended to prohibit Tribes from billing, Congress could have replaced the word "require" with the word "permit," "allow," or "authorize." Congress could also have stated that "neither the IHS *nor* any tribe" shall bill or charge Indians, in lieu of the clause "nor require any Indian tribe to do so." See e.g., Brown v. Gardner, 513 U.S. 115, 117-18 (1994) (rejecting Veterans Administration's attempt to add a "fault" requirement to a liability statute "[d]espite the absence from the statutory language of so much as a word about fault on the part of the VA").

When Congress enacted 25 U.S.C. § 458aaa-14(c), it expressly added the clause "nor require any Indian tribe to do so." (Opp'n to Mot. for TRO at 10-11.) If § 458aaa-14(c) is read as Defendants suggest, the entire phrase "nor require any Indian tribe to do so" is rendered redundant since the first clause alone would prohibit IHS from requiring tribes to charge for services. (Reply at 14.) Courts "should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress." Beisler v. C.I.R., 814 F.2d 1304, 1307 (9th Cir. 1987);

1  see also Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307-08 (1961)
2  (rejecting an interpretation of one subpart of statute where that
3  interpretation would render the immediately following subpart "a mere
4  redundancy").
5       Defendants support their interpretation of § 458aaa-14(c) by
6  arguing that when Congress enacted that provision, it was aware of a
7  1996 opinion from an administrative law judge holding that, as long as
8  the appropriation act restriction codified at 25 U.S.C. § 1681
9  remained in effect (the statutory provision that Defendants assert
10 § 458aaa-14(c) was derived from), the IHS was prohibited not only
11 from directly billing eligible Indians for services the IHS provided
12 but also from entering into ISDEAA contracts with a tribe under which
13 a tribe itself would bill eligible Indians.  (Opp'n to Mot. for TRO at
14 12, 14 (citing Nizhoni Smiles, Inc. v. IHS, DAB Dec. No. CR450
15 (1996).)  Defendants assert that therefore, "despite the lack of an
16 express statement prohibiting the IHS from entering into ISDEAA
17 contracts or compacts under which tribes (and not IHS) would bill
18 eligible Indians, it can be presumed that Congress intended for
19 section 458aaa-14(c) to have such an effect."  (Opp'n to Mot. for TRO
20 at 13.)  Defendants contend that "[a] canon of statutory construction
21 recognizes that Congress is aware of an administrative or judicial
22 interpretation of a statute and that it intends to adopt that
23 interpretation when it adopts a new law that incorporates sections of
24 a prior law."  (Opp'n to Mot. for TRO at 13-14 (citing Lorillard v.
25 Pons, 434 U.S. 575, 581 (1978)).)
26       However, 25 U.S.C. § 1681 is no longer included in the IHS
27 appropriations acts (Opp'n to Mot. for TRO at 12), and in Nizhoni
28 Smiles, § 1681 was interpreted in light of Title I of the ISDEAA, not

10

Title V.  (Reply at 15.)  Moreover, when Congress adopted § 458aaa-14(c), it did not re-enact § 1681 without change, or incorporate § 1681 into § 458aaa-14(c).[3]

> Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change . . . .  So too, where . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.

Lorillard, 434 U.S. at 580.  Here, Congress adopted the new clause "nor require any Indian tribe to do so."  Since it added that clause, it is presumed under the rationale of Lorillard, that Congress was aware of IHS's interpretation of the billing prohibition in Nizhoni Smiles and deliberately chose the exacting (and different) language in § 458aaa-14(c) to give tribes the discretion to bill, even though the IHS is prohibited from billing or forcing tribes to bill.  Defendants acknowledge that § 458aaa-14(c) is silent as to whether a tribe can charge or bill Indians.[4]  (Feb. 14, 2007 Hearing.)  However, Defendants contend that when read in light of the entire ISDEAA, § 458aaa-14(c) "unambiguously prohibits tribes and tribal

---

[3] Defendants even concede that "Congress did not actually incorporate section 1681 into section 458aaa-14(c)."  (Opp'n to Mot. for TRO at 14.)

[4] Congress's silence with regard to tribal billing should not be construed to mean that Congress assumed that such a prohibition was understood.  See Zuber v. Allen, 396 U.S. 168, 185 (1969) ("Legislative silence is a poor beacon to follow in discerning the proper statutory route."); Brown, 513 U.S. at 121 ("[C]ongressional silence 'lacks persuasive significance'").

organizations from billing Indians."[5] (Opp'n to Mot. for TRO at 9.) In support of their position, Defendants cite to 25 U.S.C. §§ 458aaa-4(b)(1) and (2).

The ISDEAA establishes what may be included in a Title V Funding Agreement. 25 U.S.C. § 458aaa-4(b). It authorizes a tribe to administer programs, services, functions, and activities ("PSFAs") "that are carried out for the benefit of Indians because of their status as Indians without regard to the agency or office of the Indian Health Service within which the program, service, function or activity (or portion thereof) is performed." Id. § 458aaa-4(b)(1). Further, 458aaa-4(b)(2) restates this authority by providing that PSFAs "with respect to which Indian tribes or Indians are primary or significant beneficiaries, administered by the Department of Health and Human Services through the Indian Health Service and all local, field, service unit, area, regional, and central headquarters or national office functions so administered under the authority of" the enumerated statutes may be included in an FA. Id. § 458aaa-4(b)(2). Thus, according to Defendants, the Tribe may only contract for programs that the IHS itself is authorized to administer. (Opp'n to Mot. for TRO at 10.)

But, §§ 458aaa-4(b)(1) and (2) do not contain any language

---

[5] Defendants also assert, however, that deference should be given to the IHS's interpretation of § 458aaa-4(b). (Opp'n to Mot. for TRO at 15 (citing Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 417 (1993)).) But, the deference referenced in Good Samaritan only applies to ambiguous statutory provisions. 508 U.S. at 414 (stating that when "[c]onfronted with an ambiguous statutory provision, we generally will defer to a permissible interpretation espoused by the agency entrusted with its implementation."). Moreover, the referenced deference appears preempted by the statutorily-mandated canon of construction found in 25 U.S.C. § 458aaa-11(f), prescribing that any statutory ambiguity is resolved in favor of a tribe.

suggesting that Congress intended to prohibit or restrict the PSFAs that a tribe may administer. (Feb. 14, 2007 Hearing.) Further §§ 458aaa-4(b)(1) and (2) do not address the *manner* in which a program may be operated, which is at issue here. (Reply at 10.)

Even if this statutory scheme is ambiguous as to the manner in which a tribe could operate a program, the ISDEAA prescribes that "[e]ach provision of [the ISDEAA] and each provision of a compact or funding agreement shall be liberally construed for the benefit of the Indian tribe participating in self-governance and any ambiguity shall be resolved in favor of the Indian tribe." 25 U.S.C. § 458aaa-11(f). Further, "the Secretary shall interpret all Federal laws . . . in a manner that will facilitate- (1) the inclusion of programs, services, functions, and activities (or portions thereof) and funds associated therewith, in the agreements entered into under this section; (2) the implementation of compacts and funding agreements entered into under this part; and (3) the achievement of tribal health goals and objectives." 25 U.S.C. § 458aaa-11(a).

Additionally, the Congressional declaration of policy regarding the ISDEAA specifically indicates that a goal of the ISDEAA is to "establish . . . a meaningful Indian self-determination policy which will permit an orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services." 25 U.S.C. § 450a(b). Congress stated that "the United States is committed to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities." Id.

1  Therefore, Plaintiff is likely to succeed on its claim that
2  Defendants' rejection of Plaintiff's final offer violates the ISDEAA.

### Status Quo

4  Defendants concede that a preliminary injunction should
5  issue, arguing "the only issue to be decided in the pending motion is
6  the nature and extent of the status quo." (Opp'n to Mot. for PI at
7  3.)  Although Plaintiff now argues that it is entitled to a
8  preliminary injunction under 25 U.S.C. § 450m-1(a), Plaintiff's motion
9  specifically seeks to preserve the status quo. (Pl.'s Mem. at 2, 3,
10 15.)  "[T]he function of a preliminary injunction is to preserve the
11 status quo ante litem."  Regents of the Univ. of Cal. v. Am. Broad.
12 Cos., 747 F.2d 511, 514 (9th Cir. 1984); Dep't of Parks and Recreation
13 for State of Cal. v. Bazaar, 448 F.3d 1118, 1124 (9th Cir. 2006).
14      "Status quo" is defined as "'the last, uncontested status
15 which preceded the pending controversy.'"  Regents of the Univ. of
16 Cal., 747 F.2d at 514 (quoting Tanner Motor Livery, Ltd. v. Avis,
17 Inc., 316 F.2d 804, 809 (9th Cir. 1963)).  "In determining what state
18 of affairs constitute the status quo, [a court] must look to the last
19 peaceable state between the parties which preceded the present
20 controversy."  Ashland Oil Co. of Cal. v. Fed. Energy Admin., 389 F.
21 Supp. 1119, 1126-27 (C.D. Cal. 1975) (quoting Wash. Basketball Club
22 Inc. v. Berry, 304 F. Supp. 1193 (N.D. Cal. 1969)).
23      Defendants assert the status quo is "an extension of
24 Plaintiff's current Title I Contract and Annual Funding Agreement
25 (AFA), and not the Title V compact as requested by Susanville."
26 (Opp'n to Mot. for PI at 2.)  Plaintiff counters the status quo is the
27 negotiated Title V Compact, including the pharmacy services provision
28 and no prohibition on billing beneficiaries. (Feb. 26, 2007 Hearing.)

Plaintiff's position on the status quo appears to more accurately reflect the last peaceable "state of affairs" between the parties. Although the last peaceable state between the parties did not include an executed Compact or 2007 FA, it did consist of a contract and funding agreement between the parties that was silent as to billing (with language identical to the language in the Compact and 2007 FA); Plaintiff engaged in billing and Defendants were aware of it; and the parties understood that Plaintiff would be entitled to a Title V Compact and FA for 2007. Defendants acknowledge that *factually* the status quo was an agreement between the parties for a pharmacy program (silent as to billing) and Plaintiff was in fact billing (and Defendants were aware of it). (Feb. 26, 2007 Hearing.) Yet, Defendants' position on the status quo ignores the fact that the parties understood that a Title V Compact and 2007 FA would be entered into and that the terms of the Compact had been negotiated and agreed upon, except for the no billing language applicable to Plaintiff's proposed pharmacy program.

## Conclusion

Therefore, because Plaintiff has established a likelihood of success on the merits and because the status quo is best preserved by an injunction permitting the parties to continue operating in the manner they were prior to commencement of this litigation and recognizing the expectation of the parties that a Compact and 2007 FA would be entered into, the following preliminary injunction issues: The parties are directed to execute the Compact and CY 2007 FA (as proposed by Plaintiff in its final offer) and provide such funding as is authorized under these agreements without imposing any condition that would prevent Plaintiff from charging beneficiaries for services.

If a judicial determination is made that Defendants' rejection of Plaintiff's final offer (and imposition of conditions on executing the Compact and 2007 FA proposed therein) was lawful, either (1) all references to the Tribe's pharmacy services program in the 2007 FA shall be deleted, no further funds shall be allocated to the Tribe's pharmacy services program, and any funds specifically allocated for the pharmacy services program shall be returned; or (2) a provision shall be added to the 2007 FA stating that eligible beneficiaries will not be charged for services pursuant to the pharmacy services program.[6]

IT IS SO ORDERED.

Dated: February 28, 2007

_____
GARLAND E. BURRELL, JR.
United States District Judge

---

[6] No bond is required since Plaintiff has requested a waiver of the security requirement (Pl.'s Mot. for PI at 2) and Defendants do not oppose that request (Feb. 14, 2007 Hearing).